861 P.2d 625

Marcel HAZINE and Margueritte Hazine, Plaintiffs–Appellants,

v.

MONTGOMERY ELEVATOR COMPANY, a Delaware Company, Defendant–Appellee.

No. CV–92–0295–PR.

Supreme Court of Arizona, En Banc.

Oct. 21, 1993.

Steven M. Friedman & Associates, P.C. by Steven M. Friedman and Goldman & Kaplan, Ltd. by David D. White, Phoenix, for plaintiffs-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Ralph E. Hunsaker, Lisa M. Sommer, Christopher Robbins, Phoenix, for defendant-appellee.

Gallagher & Kennedy, P.A. by W. Charles Thomson III, Phoenix, for amicus curiae Arizona Ass'n of Defense Counsel.

The Langerman Law Offices by Amy G. Langerman, Phoenix, and Haralson, Kinerk & Morey, P.C. by Dale Haralson, Carter Morey, Tucson, for amicus curiae Arizona Trial Lawyers Ass'n.

## OPINION

MOELLER, Vice Chief Justice.

### FACTS

Plaintiff Marcel Hazine was injured while working on an escalator manufactured and installed by defendant Montgomery Elevator Company (Montgomery). Hazine and his wife sued Montgomery in strict liability and in negligence. On the strict liability claim, they argue that the escalator was manufactured and installed in a defective condition that rendered it unreasonably dangerous.

The personal injury action was filed well within the two-year statute of limitations usually applicable to such claims, A.R.S. § 12–542. However, Montgomery moved for summary judgment on the strict liability claim under A.R.S. § 12–551, which provides:

A product liability action as defined in § 12–681 shall be commenced and prosecuted within the period prescribed in § 12–542, except that *no product liability action may be commenced and prosecuted if the cause of action accrues more than twelve years after the product was first sold for use or consumption,* unless the cause of action is based upon the negligence of the manufacturer or seller or a breach of an express warranty provided by the manufacturer or seller.

(Emphasis added.)

Plaintiffs agreed that the injury occurred more than twelve years after the escalator was first sold for use, but argued that § 12–551 is unconstitutional. Plaintiffs' principal claim of unconstitutionality was based on art. 18, § 6 of the Arizona Consti-

**342**

tution, the so-called anti-abrogation provision. It provides: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

Relying on this court's decision in *Bryant v. Continental Conveyor & Equip. Co.*, 156 Ariz. 193, 751 P.2d 509 (1988), the trial court held § 12–551 constitutional and dismissed plaintiff's strict product liability claim. The Hazines appealed, arguing that § 12–551 violated not only the anti-abrogation provisions of art. 18, § 6, but also the equal protection and due process provisions of the Arizona Constitution. The court of appeals, also relying on *Bryant*, held that § 12–551 did not violate any of the three constitutional provisions and affirmed the trial court's dismissal of the products claim.

We accepted the Hazines' petition for review to address recurrent questions of statewide importance arising under *Bryant* and the related case of *Boswell v. Phoenix Newspapers*, 152 Ariz. 9, 730 P.2d 186 (1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3). Because we find that A.R.S. § 12–551 violates the anti-abrogation features of art. 18, § 6, we do not address plaintiffs' equal protection and due process arguments.

### ISSUE PRESENTED FOR REVIEW

Whether A.R.S. § 12–551, which bars product liability actions for injuries occurring more than twelve years after a product is first sold, constitutes an unconstitutional abrogation of a right of action to recover damages for injuries under Ariz. Const. art. 18, § 6?

### DISCUSSION

**1. Regulation Versus Abrogation**

■ We must first consider whether we face a constitutional issue at all. If, as Montgomery argues, A.R.S. § 12–551 merely regulates, rather than abrogates, the Hazines' right of action to recover damages, no constitutional problem is posed.

*See Barrio v. San Manuel Div. Hosp.*, 143 Ariz. 101, 106, 692 P.2d 280, 285 (1984). This is so because even if the tort at issue is protected by art. 18, § 6:

The legislature may regulate [a cause of action] so long as it leaves a claimant reasonable alternatives or choices which will enable him or her to bring the action. It may not, under the guise of "regulation," so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action.

*Barrio*, 143 Ariz. at 106, 692 P.2d at 285. Consistent with this principle, we have upheld legislation providing worker's compensation benefits in lieu of a personal injury suit, as long as the claimant has a reasonable election between the two. *See Ruth v. Industrial Comm'n*, 107 Ariz. 572, 575, 490 P.2d 828, 831 (1971). Applying this principle, however, we declared unconstitutional a statute requiring "a minor injured before reaching the age of seven to sue for such injuries before reaching age ten." *Barrio*, 143 Ariz. at 106, 692 P.2d at 285. The rationale of *Barrio* was that the statute abolished a cause of action before it reasonably could be brought. *Barrio*, 143 Ariz. at 107, 692 P.2d at 286; *see also Kenyon v. Hammer*, 142 Ariz. 69, 74–75, 688 P.2d 961, 966–67 (1984) (finding abrogation rather than regulation where a statute "bars a cause of action before it [can] legitimately be brought").

Section 12–551 goes far beyond merely "regulating" products liability actions that accrue more than twelve years after the product is first sold for use or consumption. Instead, claims such as the one under consideration are simply abolished *before* any injury occurs. This is an even more extreme form of abrogation than that condemned in *Barrio*. *See* 143 Ariz. at 107, 692 P.2d at 286. The fact that the Hazines could still sue on express warranty or negligence theories does not, in our opinion, affect the analysis. *See Rubino v. De Fretias*, 638 F.Supp. 182 (D.Ariz.1986) (holding unconstitutional the abrogation of the right to sue in battery, notwithstanding the plaintiff's ability to sue in negligence).

Strict products liability developed because other theories of recovery proved inadequate to protect injured users and consumers. *See, e.g., Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 901 (1963) (discussing the inadequacy of warranty theories in product liability litigation); *McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 64 (Wyo. 1989) (noting the inadequacy of negligence theories); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 98 (5th ed. 1984). Thus, a right to sue in negligence or express warranty is not a reasonable alternative to a products liability action. We conclude that § 12–551 abrogates the Hazines' substantive right to maintain an action for personal injuries. Thus, if a products liability action falls within the protection of art. 18, § 6, a subject to which we now turn, § 12–551 is unconstitutional.

### 2. Whether A.R.S. § 12–551 Violates Art. 18, § 6

In considering whether A.R.S. § 12–551 is unconstitutional, it has become apparent to us that two decisions of this court conflict and cannot be reconciled. *Compare Bryant*, 156 Ariz. at 195, 751 P.2d at 511, *with Boswell*, 152 Ariz. at 12–20, 730 P.2d at 189–97. In *Boswell*, the earlier case, the defendant argued that damages for emotional injury in a defamation case could be statutorily restricted because such injury was not compensable at common law. Noting that art. 18, § 6 covers strict liability torts, *Boswell*, 152 Ariz. at 12–17, 730 P.2d at 189–94, we stated that art. 18, § 6 "extends to wrongs recognized at common law, but *it is not limited to those elements and concepts of particular actions which were defined in our pre-statehood case law.*" *Boswell*, 152 Ariz. at 17–18, 730 P.2d at 194–95 (emphasis added). Accordingly, a unanimous court declared unconstitutional a statute that purported to limit damages in defamation actions where retractions had been printed. In doing so, the court discussed at length the history and language of art. 18, § 6, the framers' intent in adopting it, subsequent case law, and the open court provisions in other state

constitutions. *Boswell*, 152 Ariz. at 12–17, 730 P.2d at 189–94.

Just two years later, responding to an argument that art. 18, § 6 did not extend to strict product liability torts, the *Bryant* opinion held that "A.R.S. § 12–551 is not an abrogation of a substantive right of action protected by art. 18, § 6 *because the tort of strict products liability did not exist at the time the constitutional provision was adopted.*" *Bryant*, 156 Ariz. at 195, 751 P.2d at 511 (emphasis added). Referring to *Boswell*, the majority merely observed:

> Admittedly, we have held that art. 18, § 6 protects actions for negligence and breach of warranty and extends to all actions recognized at common law at the time of the article's adoption. We have not, however, extended the protection of art. 18, § 6 to strict products liability.

*Id.* (citation omitted).

The three-judge majority in *Bryant* was composed of two members of this court and one court of appeals judge sitting by assignment. Two members of this court dissented, arguing that *Bryant* ran counter to our own case law, including *Boswell*. The *"Boswell v. Bryant"* controversy has raged ever since.

We are unpersuaded by the efforts of the *Bryant* majority and the defendant here to reconcile *Boswell* and *Bryant*. Defendant argues that *Boswell* does not conflict with *Bryant*, because *Boswell* dealt only with an extension of recovery for damages in defamation—a cause of action well recognized at common law. In contrast, defendant argues that strict products liability, which was at issue in *Bryant*, did not even exist at common law. *Bryant*, 156 Ariz. at 195, 751 P.2d at 511. Therefore, defendant argues that the *Boswell* rule should be restricted to extensions of particular causes of action recognized at common law. We disagree.

The text of Arizona's Constitution is broad, unambiguous, and protects "the right of action to recover damages for injuries." Art. 18, § 6. We agree with the unanimous *Boswell* court that this constitu-

tional protection "is not limited to those elements and concepts of particular [causes of action] which were defined in our pre-statehood case law." *Boswell,* 152 Ariz. at 18, 730 P.2d at 195.

The right to recover for injuries caused by products was, of course, recognized at common law; therefore, the development of strict liability causes of action to vindicate that right is, under the *Boswell* analysis, covered by art. 18, § 6. *See Boswell,* 152 Ariz. at 17–18, 730 P.2d at 194–95. The evolution of common law causes of action—whether in duty, standard of care, or damages—falls within the broad coverage of art. 18, § 6. *See id.; see also Humana Hosp. v. Superior Court,* 154 Ariz. 396, 399, 742 P.2d 1382, 1385 (App. 1987) (holding that art. 18, § 6 applies to negligent supervision claims although this cause of action was not recognized until 1972); *Franks v. United States Fidelity & Guar. Co.,* 149 Ariz. 291, 299–300, 718 P.2d 193, 201–02 (App.1985) (art. 18, § 6 applies to tort of bad faith, although bad faith cause of action not recognized until 1981).

Acceptance. of Montgomery's argument would inevitably lead to the conclusion that the legislature could constitutionally restrict personal injury claimants to pre-statehood theories of liability and pre-statehood measures of damages. If such a result is desired today, it must come about through constitutional amendment. Given the history of art. 18, § 6, *see Boswell,* 152 Ariz. at 12, 730 P.2d at 189, it is inconceivable that the framers of the Arizona Constitution had any such intent. "The law must allow for evolution of common-law actions to reflect today's needs and knowledge. Any other rule would allow those 'long dead' to dictate solutions to problems of which they could not have been aware." *Boswell,* 152 Ariz. at 18, 730 P.2d at 195. We agree with this statement from the *Bryant* dissent:

> True, the "doctrine" of strict liability for injuries caused by a product was first recognized by this court in the 1960's. That historical fact is interesting, but totally irrelevant. Article 18, § 6 was not enacted to protect particular doc-

trines, theories or "causes of action." The text of the constitution protects a broader concept—"the *right of action* to recover damages for injuries." Depending on privity, the *right of action* to recover damages for injuries caused by defective products was recognized at common law long before Arizona became a territory. While not universally applied to product liability cases until recent times, theories of strict and even absolute liability were recognized in tort law well before 1912. All that has happened since 1912 is the logical application of *Rylands v. Fletcher's* strict liability theory to the right to bring a product liability action.

*Bryant,* 156 Ariz. at 198–99, 751 P.2d at 514–15 (Feldman, V.C.J., dissenting) (citations omitted).

Although we do not lightly overturn our prior decisions, the fact is that *Bryant* and *Boswell* cannot be reconciled. This contradiction has caused uncertainty and confusion in subsequent cases and commentary. *See, e.g., Church v. Rawson Drug & Sundry Co.,* 173 Ariz. 342, 345–46, 842 P.2d 1355, 1358–59 (App.1992); Richard E. Gordon, Note, *Schwab v. Matley: The Constitutionality of the Legislative Attempt to Limit Dramshop Liability in Arizona,* 33 Ariz.L.Rev. 955, 972–76 (1991). Additionally, the conflict between *Bryant* and *Boswell* has resulted in the application of the important constitutional principle expressed in art. 18, § 6 becoming unworkable and unpredictable. Because we must overrule one or the other, we overrule the one we find to conflict with the constitution. We believe *Boswell* correctly expresses and applies the constitutional imperative of art. 18, § 6, and we adopt it. In doing so, we necessarily overrule *Bryant.*

## SUPREME COURT PRACTICE

*Bryant* was argued while a vacancy on the court was in the process of being filled. A visiting judge was called in, and the case was decided on a 3–2 basis, with the permanent members of the court splitting 2–2. *Bryant* was therefore suspect authority from the moment it was issued,

particularly given the preexisting *Boswell* opinion. In retrospect, it would have been advisable, when it became known that a split on a court in transition was occurring, to delay argument or to have reargument. In the recent past, this court has, at times, when confronted with a 2–2 split by permanent members of the court, declined to render a decision, *see State ex rel. McDougall v. Martone,* 174 Ariz. 343, 849 P.2d 1373 (1993) (one Justice had recused himself), or has rescheduled oral arguments after a new member of the court has been seated, *see State v. Youngblood,* CR–90–0053–PR (order dated April 3, 1992). We have done this in an attempt to avoid the confusion in other areas of the law similar to that engendered by *Bryant* in interpreting art. 18, § 6. *See Church,* 173 Ariz. at 346, 842 P.2d at 1359 ("Since the composition of the court changed between the time that *Humana Hospital* and *Bryant* were decided, and has changed again since *Bryant,* this question may still be an open one."). The procedure followed in *McDougall* and *Youngblood* is the better practice in those rare instances where the court is divided and in transition. On important issues that tend to recur, we will follow such procedures when feasible. We commend it to our successors as well.

## CONCLUSION AND DISPOSITION

Whether or not the Hazines are entitled to damages, the Arizona Constitution protects their right to sue in strict liability. A.R.S. § 12–551 abrogated that constitu-

tional right by barring the action even before the injury occurred. Under *Boswell,* the attempted statutory abrogation of their claim fails. We overrule *Bryant,* vacate the memorandum decision of the court of appeals, reverse the trial court's summary judgment, and remand to the trial court for further proceedings consistent with this opinion.

CORCORAN and ZLAKET, JJ., concur.

FELDMAN, Chief Justice, specially concurring.

I join in and fully agree with the majority opinion's analysis and result, including the substantive discussion of why *Bryant* was decided incorrectly. The dissent, however, compels response. Contrary to the dissent, the court has not "[f]or the first time in Arizona legal history ... constitutionalize[d] the law of torts."[1] The 1910 Arizona Constitution, not today's opinion, constitutionalized the law of torts. This "exceptional proposition"[2] was advanced over a half-century ago by members of this court, who had been delegates to the 1910 Constitutional Convention.

From earliest days of statehood, this court held that Ariz. Const. art. 18, § 6 "perpetuates the common-law action to recover damages." *Behringer v. Inspiration Consolidated Copper Co.,* 17 Ariz. 232, 241, 149 P. 1065, 1068 (1915) (Cunningham, J., concurring).[3] *See also Inspiration Consolidated Copper Co. v. Mendez,* 19 Ariz. 151, 167, 166 P. 278, 284 (1917).[4]

1. Dissent at 346, 861 P.2d at 631.

2. *Id.*

3. Judge Donnell LaFayette Cunningham (Democrat–Cochise County) was Chair of the 1910 Arizona Constitutional Convention's Judiciary Committee. He had an invaluable perspective on the meaning of the Arizona Constitution's anti-abrogation clauses [art. 18, § 6 and art. 2, § 31] because he chaired the committee that considered and proposed them, and engaged in debates on their meaning and scope. *See, e.g.,* THE RECORDS OF THE ARIZONA CONSTITUTIONAL CONVENTION OF 1910, 152, 542, 548 (John S. Goff, ed. 1991) (hereinafter CONVENTION RECORDS).

The Judiciary Committee's first version of the anti-abrogation clauses apparently only concerned employee lawsuits. *Id.* at 150–52. After the convention deleted any reference to employees, Judiciary Committee Chair Cunningham acknowledged that "we are going into an entirely different field." *Id.* at 152.

4. Chief Justice Alfred Morrison Franklin (Democrat–Maricopa County), another member of the 1910 Constitutional Convention's Judiciary Committee, joined in Judge Cunningham's majority opinion in *Mendez.* In the 1910 convention debates, Franklin disapproved of the initial labor emphasis of the original version of the anti-abrogation clauses, proposing that "this measure should be made not only to include employees but other persons." CONVENTION RECORDS at 152.

Any doubt about the breadth or meaning of these statements was put to rest in *Alabam's Freight Co. v. Hunt,* 29 Ariz. 419, 242 P. 658 (1926), in which the defendant argued that the action for damages was not constitutionally protected. This court rejected that argument in a unanimous opinion, stating that the damage action "was taken from its status as one subject to the will of the legislature and imbedded in the Constitution." *Id.* at 443, 242 P. at 665.

Some have argued that this broad language about constitutionalizing tort law was meant to apply only to actions between employee and employer. *See* Roger C. Henderson, *Tort Reform, Separation of Powers, and the Arizona Constitutional Convention of 1910,* 35 ARIZ.L.REV. 535 (1993).[5] That argument was dismissed decades ago. Arizona cases have long held that the constitutional protection given tort law by art. 18, § 6 goes beyond employee-employer situations and applies to all actions. *See, e.g., Hunt,* 29 Ariz. at 444, 242 P. at 666; *Alabam Freight Lines v. Thevenot,* 68 Ariz. 260, 204 P.2d 1050 (1949) (applying art. 18, § 6 to bodily injury and property damage claims arising out of a motor vehicle collision); *Ruth v. Industrial Commission,* 107 Ariz. 572, 490 P.2d 828 (1971); *Barrio v. San Manuel Division Hosp.,* 143 Ariz. 101, 692 P.2d 280 (1984) (applying art. 18, § 6 to a medical malpractice action). *See also Davis v. Boggs,* 22 Ariz. 497, 199 P. 116 (1921),[6] and *Layton v. Rocha,* 90 Ariz. 369, 370, 368 P.2d 444, 445 (1962) (both dealing with art. 18, § 5).

In short, today's opinion breaks no new ground but merely follows the path taken from the earliest days of statehood. It is simply incorrect to conclude, as does the dissent, that today's opinion advances the "remarkable proposition" that Arizona has "constitutionalized the law of torts."[7]

Nor is it correct to suggest that we hold the "legislature is without power to tinker" with tort law.[8] It is abrogation, not "tinkering," to erect a statute of limitations barring a damage action *before* the accident occurs and suit can be brought. *Barrio,* 143 Ariz. at 106, 692 P.2d at 285. This court has long recognized, however, that the legislature has a constitutional role and may regulate, so long as it does not abrogate. *See Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 (1977); *Barrio,* 143 Ariz. at 106, 692 P.2d at 285 (describing distinction between "abrogation" and permissible legislative "regulation") (citing *Ruth* and *Moseley v. Lily Ice Cream Co.,* 38 Ariz. 417, 421, 300 P. 958, 959 (1931) and comparing *Industrial Commission v. Crisman,* 22 Ariz. 579, 199 P. 390 (1921)).

Believing that today's majority opinion fully accords with the text of the Arizona Constitution, the vision of its drafters, and this court's precedents from the beginning of statehood, I concur in that opinion.

MARTONE, Justice, dissenting.

For the first time in Arizona legal history the court constitutionalizes the law of torts. Because art. 18, § 6 of the constitution is no authority for such an exceptional proposition, I dissent.

This case presents issues of extraordinary conceptual complexity. This is not a case of whether the protection afforded by art. 18, § 6 is governed by evolving standards. Instead, this is a case about whether this court's own post-constitution common law development of the law of torts is entitled to constitutional protection under art. 18, § 6. All agree that the law of torts must evolve to meet contemporary conditions. Thus it was that this court adopted strict products liability in tort. The ques-

---

**5.** Cited by dissent at 348, 861 P.2d at 633.

**6.** Unanimous opinion authored by Judge Albert Cornelius Baker (Democrat–Maricopa County), who also served on the 1910 Constitutional Convention's Judiciary Committee. As did delegate Franklin, at the 1910 convention Baker "not only favor[ed] the measure [the first version of the anti-abrogation clauses] as a protection to

employees but [he] would make it to cover all persons ... where such persons were subjected to accident, death or injury." CONVENTION RECORDS at 152.

**7.** Dissent at 348, 861 P.2d 633.

**8.** Dissent at 348, 861 P.2d 633.

tion is whether, once this court creates a new tort, unknown at common law, the constitution operates to immunize it from later legislative or judicial abrogation. The court concludes that it does.

The court decides this case as though it need only choose between *Boswell* and *Bryant.* But *Boswell* and *Bryant* are not irreconcilable. *Boswell* did not present the issue presented in this case. The tort in *Boswell* was defamation, one clearly recognized at common law at the time our constitution was adopted. The real issue in *Boswell* was whether art. 18, § 6 extended to causes of action other than negligence. *Boswell* held that it also protected "the right to recover damages for injury to reputation." 152 Ariz. at 17, 730 P.2d at 194. The issue in *Bryant* was quite different. Unlike defamation, a cause of action for strict products liability in tort did not exist at common law but instead was created by this court 50 years later, after our constitution was adopted and after the American Law Institute developed § 402A of the Restatement (Second) of Torts (1965). A cause of action for a defective product under § 402A is quite different from the absolute liability imposed by the common law for ultrahazardous activities, *Rylands v. Fletcher,* or for causes of action based upon negligence or contract, all causes of action which existed at the time our constitution was adopted. But strict products liability is a new ·and separate cause of action. It is not negligence. It is not warranty. It is not contract. It is not absolute liability.

*Bryant* was correct when it concluded that art. 18, § 6 does not apply to this court's post-constitution development of the law of torts. 156 Ariz. at 195, 751 P.2d at 511. This court reached that conclusion 50 years ago in *Industrial Commission v. Frohmiller,* 60 Ariz. 464, 468, 140 P.2d 219, 221 (1943). It was argued in that case that the Arizona Occupational Disease Disability Law abrogated the right of action under art. 18, § 6 of the constitution. We said:

If the right to recover damages or compensation under the common law for injury caused by occupational disease ex-

isted at the time these constitutional provisions were adopted, this contention of defendant would have some force. But it is our view that no right of action solely for occupational disease existed at common law, though perhaps it was incidental to some other acts of negligence, and that no constitutional or statutory provision allowed recovery for such a disability, and hence that the option given by section 60 merely preserves the right of action, provided one exists.

60 Ariz. at 468, 140 P.2d at 221.

Today the court reaches a contrary conclusion by relying upon that part of *Boswell* that related to emotional injury as a new element of *damages,* not a new cause of action. 152 Ariz. at 17, 730 P.2d at 194. By applying that language to a new cause of action, the court goes well beyond *Boswell* and ignores 50 years of Arizona constitutional law. In short, today the court prefers *Boswell*'s dicta to the holdings in *Frohmiller* and *Bryant.*

If it were just a matter of common law preference, it would not matter much. But today's holding creates the most extraordinary constitutional puzzles. Suppose, for example, that the legislature rather than this court adopted strict products liability in tort in 1965. Certainly, the legislature could repeal such a statute and not run afoul of art. 18, § 6. *Halenar v. Superior Court,* 109 Ariz. 27, 29, 504 P.2d 928, 930 (1972). ("The right to recover damages for wrongful death being statutory is not placed beyond the power of the legislature to abrogate by § 6 of Article 18 of the Arizona Constitution.") Why then should this court's common law development of the law of torts be protected by art. 18, § 6 when legislative developments in the law of torts are not? Does the anti-abrogation clause restrict abrogation by the legislature, but not this court?

On the other hand, if the legislature could not repeal its own expansion of products liability law because of art. 18, § 6, could we? Evolving conditions require changes in the common law. Thus, this court must always reserve to itself the power to ensure that contemporary law is

always consistent with contemporary fact. *See* Lawrence M. Friedman, *A History of American Law* 201 (2d ed. 1985). How could we develop the common law of torts if we thought that every time we did something it became constitutional law? Under today's decision, can we overrule our cases which first acknowledged strict liability in tort? The answer, of course, is that we can. Article 18, § 6 is no straitjacket. Article 18, § 6 prevents the legislature from abrogating a cause of action to recover damages for injuries that existed at common law. It is quite another thing to say, as the court says here, that the legislature is without power to tinker with *our* subsequent expansion of tort doctrine. Under today's decision, art. 18, § 6 is transformed from a shield to a sword. Article 18, § 6 was designed to prevent the legislature from abrogating a cause of action at common law, not to elevate our evolving tort law to the status of state constitutional law.

The court says, and I agree, that the law must allow for evolution of common law actions to reflect today's needs and knowledge. It says that any other rule would allow those "long dead" to dictate solutions to the problems of which they could not have been aware. *Ante*, at 344, 861 P.2d at 629. But I fear this is exactly what we have done today. Just as our court had to have the power to adopt strict products liability to meet the standards of 30 years ago, the legislature must have that same power to adapt our common law development to today's standards. We each have a role in the development of the law. That art. 18, § 6 does not protect new developments in the law does not mean that there would be no need for new developments in the law. It just means that both this court and the legislature have flexibility beyond the threshold that existed at the time of the adoption of our constitution. By locking our newly developed tort law into the concrete of constitutional protection, we now lose the very flexibility the court seeks to preserve.

The special concurrence does not address the issue that troubles me, and the only

one presented by this case—causes of action created by the court after the constitution was adopted. Instead, it responds to an argument that I do not make about limiting the scope of art. 18, § 6 to employer-employee cases. This diverts attention from the fact that everyone agrees art. 18, § 6 protects rights of action for injury claims that existed at the time the constitution was adopted. But, until today, that protection did not also constitutionalize *subsequent* judicial developments in the law of torts. For example, the Contract Clause of the United States Constitution prohibits a state from passing a law "impairing the Obligation of Contracts." U.S. Const. art. I, § 10. But the law of contracts has not been constitutionalized by this provision. The Contract Clause protects against the abrogation of a contract (a concept which existed at the time of the adoption of the Contract Clause), but it does not prevent a state from subsequently *expanding* contract rights, and then later abandoning that *expansion.*

Arizona is unique in a lot of ways. Today it is unique because we have constitutionalized the law of torts. There is nothing about the history or the language of art. 18, § 6 that would suggest such a remarkable proposition. *See* Roger C. Henderson, *Tort Reform, Separation of Powers, and The Arizona Constitutional Convention of 1910*, 35 Ariz.L.Rev. 535 (1993). *Boswell* and *Bryant* are not in conflict. In assuming that they are, we miss the chance to articulate more clearly the contours of the protection afforded by art. 18, § 6. We also needlessly advance the day when some will say that if this is what art. 18, § 6 means, its time has come and gone.